**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

Edward R. Strynkowski, as representative of the
ESTATE OF KATHLEEN STRYNKOWSKI,

CASE NO. 07-15488

HON. MARIANNE O. BATTANI

Plaintiff,

v.

NGS AMERICAN, INC., a Michigan corporation, NGS AMERICAN, INC. EMPLOYEE MEDICAL BENEFIT PLAN, an employee welfare benefit plan, NGS AMERICAN INC. EMPLOYEE BENEFIT PLAN TRUST, an employee welfare benefit plan, and CNA CONTINENTAL CASUALTY COMPANY, an Illinois corporation,

Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants' Motion for Summary Judgment (Doc. # 36). The Court heard oral argument on December 1, 2009, and at the conclusion of the hearing took this matter under advisement. For the reasons that follow, the Court **GRANTS** Defendants' motion.

**I. STATEMENT OF FACTS**

Defendant NGS American Inc. (NGS), a third-party administrator of medical and disability claims, employed Plaintiff's decedent, Kathleen Strynkowski (Kathleen), as a Medical Claims Clerk from June 2000 until her termination on July 3, 2007. Defendant NGS American Inc. Employee Medical Benefit Plan is the group health plan for NGS

1

employees. NGS American Inc. Employee Benefit Plan Trust is the plan administrator of the Health Plan. Kathleen participated in the plan.

In April 2006, Kathleen discovered she had a cancerous lesion in her colon. She contacted the Human Resources Generalist, Ann Kroepel, and informed her that she was having surgery and would be off of work for some time.

Kathleen received five months of paid leave. During that time, she provided supplemental statements to NGS regarding her condition, treatment, and restrictions. See Pl.'s Exs. 19-28. Specifically, NGS provides preprinted envelopes to employees on medical leave to submit their disability claim forms; the envelopes are addressed to the Benefits Analyst. The Benefits Analyst, Mary Ann McCluskey, saw the specific medical information submitted by Kathleen until 2007, when Larece Jackson took over as benefit analyst.

When Kathleen returned to expanded duties on September 25, 2006, she provided a full medical release. Nevertheless, Kathleen continued to receive chemotherapy treatment every three weeks. She testified that she spent a lot of time in the bathroom, was lightheaded, dizzy, and fatigued, and that her coworkers complained about her medical schedule. When Kathleen informed her supervisor, Bob Schram, about the complaints, he resolved the problem.

In April 2007, Kathleen was given another duty, phone switchboard operator. She subsequently asked Kroepel to be relieved of this duty because it was interfering with her medical treatments. Although Kroepel relieved Kathleen of this duty, Kroepel indicated in an email sent to Scram and Senior Vice President, Susan Dargo-Martino, that Kathleen was not performing the job satisfactorily. Pl.'s Ex. 36.

The incident giving rise to Kathleen's termination occurred several months later, during the week of June 18, 2007. Sandy Socia, a Medical Claims Analyst, brought papers to a photocopier located near Kathleen's desk. After the copier jammed, Socia left to look for her clerk, Brenda Demo, to help clear the copier. Kathleen had observed the copier jamming, and considered it her duty to assist. After Socia left, Kathleen went to the copier and cleared the jam. She took the documents that had been jammed and threw them in a shredding bin. Kathleen understood that the documents were claim records from an NGS client seeking payment of medical expenses. She further presumed that the records were original claim documents. She knew that without the originals, the claims could not be processed and paid; however, she never attempted to retrieve identifying information. Kathleen also knew that the only means by which NGS would be likely to know which originals were destroyed would be when an insured contacted NGS inquiring about the status of his claim. Kathleen never contacted Socia about the incident.

Kathleen eventually learned from Heidi Elgabrey, a Claims Analyst, that some documents were missing for a claim Elgabrey was processing. Socia also processed claims for this particular client. Plaintiff sent an email the following work day to Dee Schatow, who supervised the claims unit where Elgabrey and Socia worked. Kathleen informed Schatow that she had witnessed Socia jamming the copier and thought Schatow should know so that Elgabrey and Demo were not blamed.

The email reads as follows:

Hi, last week Sandy Socia jammed up the copier with YG corresp. I pulled it out of the feeder. The next day Terry called for service. I'm not saying this because I'm friends with Brenda and Heidi. I didn't want Heidi and Brenda in hot water. I didn't say anything to anyone. OK KS

Defs.' Ex. A1.

Kathleen did not inform Schatow that the original documents had been discarded. Schatow passed the email to Human Resources.

The next week, Elgabrey informed Schatow that she was missing documents from the client files. Schatow had searched for the documents, but they were not located. After Elgabrey suggested that Socia may have taken the documents, management called a meeting which Schatow, Dargo-Martino, Kroepel, Socia, Elgabrey, Demo, and Kathleen attended. At the meeting, Kathleen admitted that she had thrown the original claims records in a shredding bin. Kathleen believed she threw four to five files into the bin. When Dargo-Martino heard this information, she became upset and yelled at Kathleen.

After the meeting, Kroepel and Dargo-Martino discussed Kathleen's actions and agreed Kathleen should be terminated. They met with Kathleen and informed her she was being discharged, effective immediately, even though Schatow located some missing files after the meeting was adjourned.

Three months after her termination, Kathleen had a recurrence of cancer. She was diagnosed with Stage Four ovarian and colon cancer. She died after this law suit was filed. Defendants contend that Plaintiff Edward R. Strynkowski, as Personal Representative of the Estate of Kathleen Strynkowski, cannot establish a prima facie case of intentional interference with Kathleen's rights under ERISA, 29 U.S.C. § 1001 et seq., or disability discrimination under the Michigan Persons With Disabilities Civil Rights Act, Mich. Comp. Laws § 37, 1101 et seq. (PWDCRA).

## II. STANDARD OF REVIEW

Pursuant to Rule 56(c), a motion for summary judgment is to be granted only if the evidence indicates that no genuine issue of material fact exists.  FED. R. CIV. P. 56(c).  To avoid summary judgment, the opposing party must have set out sufficient evidence in the record to allow a reasonable jury to find for him at trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

The sufficiency of the evidence is to be tested against the substantive standard of proof that would control at trial.  Anderson, 477 U.S. 242.  The moving party has the burden of showing that there is an absence of evidence to support the non-moving party's case.  Celotex v. Catrett, 477 U.S. 317, 325 (1986).  "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 256.  In disposing of a motion for summary judgment, this Court must consider the evidence in the light most favorable to the nonmoving party, but may weigh competing inferences for their persuasiveness.  Matsushita, 475 U.S. at 574.

## III. ANALYSIS

Defendants challenge both counts of Plaintiff's amended complaint.  The viability of each count is discussed below.

### A. ERISA claim

The parties dispute whether Kathleen's termination violated ERISA, which includes provisions "aimed primarily at preventing unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining [or using] vested [ ] rights." West v. Butler, 621 F.2d 240, 245 (6th Cir. 1980).  Pursuant to § 510, "[i]t shall be unlawful

5

for any person to **discharge**, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan or. . .for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . ." 29 U.S.C. § 1140 (emphasis added). Smith v. Ameritech, 129 F.3d 857, 864 (6th Cir. 1997).

In the absence of direct evidence of [specific intent to violate ERISA], the plaintiff can state a prima facie case by showing the existence of "'(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled.'" Id. (quoting Gavalik v. Continental Can Co., 812 F.2d 834, 853 (3d Cir.1987)); see also Shahid v. Ford Motor Co., 76 F.3d 1404, 1411 (6th Cir. 1996) (quoting same). To survive a defendant's motion for summary judgment, a "plaintiff must come forward with evidence from which a reasonable jury could find" that the defendant's desire to avoid medical benefits liability was "a determining factor" in the plaintiff's discharge. Humphreys v. Bellaire Corp., 966 F.2d 1037, 1044 (6th Cir. 1992) (quoting Nixon v. Celotex Corp., 693 F. Supp. 547, 555 (W.D. Mich.1988)).

Here, there is no direct evidence of specific intent. Plaintiff must show that desire to avoid benefit liability resulted in Kathleen's discharge. Plaintiff asserts there is a causal link between Kathleen's discharge and the cost of treatment.

Viewed in the light most favorable to Plaintiff, there is evidence that the principal decision-makers knew Kathleen had been treated for cancer, even if they were unaware of the specific financial details. She was off work for five months. Many people in the company knew about Kathleen's medical condition. Further, Kathleen had complained to

Kroepel a few months before she was terminated that her assignment to phones interfered with her medical appointments. Therefore, even if Kroepel and Dargo-Martino were unaware of the precise amount of money spent on Plaintiff's health care, the fact that she was off work for five months of paid leave and that medical treatment continued after she returned, place a reasonably informed person on notice that medical expenses would be significant, regardless of the existence of stop gap insurance coverage.

Even if Plaintiff establishes a prima facie case under § 510, Defendants may rebut the inference of impermissible termination by introducing evidence of a legitimate, nondiscriminatory reason for Plaintiff's discharge. That analysis follows the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), for analyzing cases alleging workplace discrimination based on indirect evidence. If the plaintiff establishes a prima facie case, then an inference of discrimination arises. At that point the burden of production shifts to the employer, who must set forth a legitimate, nondiscriminatory reason for the plaintiff's discharge. See Humphreys, 966 F.2d at 1043. The plaintiff then must "indict the credibility of his employer's explanation by circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. In other words, . . . the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or a coverup." Manzer v. Diamond Shamrock, 29 F.3d 1078, 1084 (6th Cir. 1994).

To so demonstrate, the plaintiff must prove "that the [employer's] asserted reasons have no basis in fact, that the reasons did not in fact motivate the discharge, or, if they were factors in the [employer's] decision, that they were jointly insufficient to motivate the

discharge." Burns v. City of Columbus, 91 F.3d 836, 844 (6th Cir. 1996) (citation omitted); see Smith, 129 F.3d at 864.

According to Defendants, Kathleen was terminated for throwing another employee's client claim files into a shredding bin. Kathleen characterizes her conduct as unjamming the copier, a task she had undertaken on many occasions. Despite Kathleen's innocuous characterization, the facts support that termination resulted from NGS' discovery that she had mishandled confidential information, and the Court finds, as a matter of law, that Plaintiff cannot demonstrate that NGS' proffered reason for taking the adverse action was pretextual. See id.

First, Plaintiff cannot show that the "proffered bases for [Kathleen's] discharge never happened, i.e., that they are factually false." Manzer, 29 F.3d at 1084. It is undisputed that the occurrence actually happened. Kathleen herself admitted it at the meeting. Nor can Plaintiff "prove that employer's proffered reason is unworthy of credence." Gavalik v. Continental Can Co., 812 F.2d 834, 853 (3d Cir. 1987). Although Plaintiff asserts that the delay between Kathleen's clearing of the copying jam and her termination establish pretext, the facts do not support Plaintiff's position that a delay occurred.

First, the email Kathleen sent does not mention that files or papers were discarded. Consequently, no reasonable person could find this email gave notice to NGS that an investigation into missing files was warranted. Second, NGS terminated Kathleen contemporaneously with its discovery that Kathleen had mishandled confidential information because she was mad. Kathleen never informed anyone about the documents

she placed in the shredding bin until the meeting.

The Court rejects Plaintiff's contention that NGS's failure to adhere to the progressive disciplinary steps outlined in the disciplinary handbook policy demonstrates pretext. The handbook expressly authorizes management to discipline an employee outside the listed disciplinary steps.

Finally, Plaintiff has advanced no evidence to show that other employees, who engaged in similar conduct were treated differently. Although Plaintiff argues that discrimination can be inferred because neither Socia nor Elgabrey were disciplined, they did not engage in comparable conduct.

In sum, NGS had a legitimate, nondiscriminatory reason for firing Kathleen–she destroyed claims documentation. Further, given the magnitude of the indiscretion, Plaintiff can neither show that the reason given was a pretext, nor that Kathleen was treated differently than other employees. Neither the timing of Kathleen's termination, nor the departure from a normal practice of progressive discipline support an inference favorable to Plaintiff. Therefore, Plaintiff has no evidence to show that NGS' desire to cease paying high medical costs for Kathleen was a determining factor in her discharge. accordingly, the Court finds Plaintiff's ERISA claim fails as a matter of law.

### B. PWDCRA Claim

Defendants raise two issues relative to Plaintiff's state law claim: first, whether the claim is preempted; second, whether it fails as a matter of law. The Court addresses each below.

### 1. ERISA preemption

ERISA preemption is governed by § 514(a), 29 U.S.C. § 1144(a), "which provides that the statute's substantive provisions 'supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." The words "relate to" are read broadly. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138 (1990).

A wrongful termination cause of action may be preempted by ERISA, even if it states tort and contract theories and seeks compensatory and punitive damages, when the employee alleges that a principal reason for his discharge was his employer's desire to avoid paying him benefits under an ERISA plan. Id. at 135-36, 140. ERISA will not preempt a wrongful discharge claim, however, "to the extent it relies on theories independent of the benefit plan." Id,

Plaintiff's claim under the PWDCRA does not relate to the administration of employee benefit plans. In this claim, Plaintiff was not seeking a remedy based on interference with Kathleen's disability coverage, she was seeking reinstatement to work based on her theory that she was terminated because she had cancer and that the medical costs associated motivated her termination. Mere reference to damages suffered because of her termination does not result in preemption. See Wright v. Gen. Motors, Corp., 262 F.3d 610, 615 (6th Cir. 2001).

Accordingly, the Court finds that this suit does not fall within the scope of ERISA's civil enforcement scheme, 29 U.S.C. § 1132, or otherwise threaten to unbalance that remedial scheme. Compare Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 135 (1990) (concluding that "a state common law claim that an employee was unlawfully discharged

to prevent his attainment of benefits under a plan covered by ERISA" was preempted by ERISA).

### 2. Prima facie case/motivation for discharge

Defendants contend that Plaintiff is unable to establish a prima facie case of disability discrimination because Kathleen is not a person with a disability. In the alternative, they assert that Plaintiff cannot show that Kathleen was terminated because of an illegal motivation or animus toward her disability.

To establish a prima facie case of disability discrimination under the PWDCRA, a plaintiff must prove (1) that she is disabled within the meaning of the Act; (2) that the alleged disability is unrelated to her ability to perform her job duties; and (3) that she has been discriminated against in one of the ways set forth in the Act. Peden v. Detroit, 680 N.W.2d 857, 864-64 (Mich. 2004). If the plaintiff presents a prima facie case, the burden then shifts to the defendant to articulate a nondiscriminatory reason for the adverse employment action. Id. If the employer articulates such a reason, the burden shifts back to plaintiff to show that the employer's reasons were a mere pretext. Rollert v. Civil Service Dept., 579 N.W.2d 118, 121 (Mich. Ct. App. 1998).

Even of Plaintiff were able to establish the existence of genuine issues of material fact as to whether Kathleen was a qualified individual under the PWDCRA, the claim fails on the pretext prong for the same reasons the federal claim failed. Specifically, Plaintiff cannot establish that Kathleen suffered an adverse action *because of* her disability. As with the analysis of Plaintiff's ERISA claim, to make a state discrimination claim, Plaintiff must advance either direct evidence that the adverse employment decision was made

11

because of Kathleen's cancer; or, there must be evidence that the reason given for the adverse employment decision was mere pretext. Because Plaintiff does not have any direct evidence of illegal motivation, Plaintiff must show the reason NGS gave for Kathleen's termination was pretextual. For the reasons discussed previously, Plaintiff cannot make this showing.

In sum, Plaintiff has not adduced sufficient evidence to demonstrate NGS' animus or discriminatory motivation for its employment decision. Kathleen admitted she placed original claim files in a shredding bin without authorization. The fact that one of the claims was denied later does not undermine the basis of the termination. Nor would NGS have to wait to ascertain that fact before terminating her employment. Even if NGS suffered no adverse consequences as a result of Kathleen's decision, her conduct was so serious as to warrant immediate termination. Therefore, her claim fails as a matter of law.

## IV. CONCLUSION

For the reasons stated, the Court **GRANTS** Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

                                                  s/Marianne O. Battani
                                                  MARIANNE O. BATTANI
                                                  UNITED STATES DISTRICT JUDGE

Date: February 3, 2010

## CERTIFICATE OF SERVICE

Copies of this Order were mailed and/or electronically filed to counsel of record on this date.

s/Bernadette M. Thebolt
Case Manager