UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Edward R. Strynkowski, as representative of the
ESTATE OF KATHLEEN STRYNKOWSKI,

CASE NO. 07-15488

HON. MARIANNE O. BATTANI

Plaintiff,

v.

NGS AMERICAN, INC., a Michigan corporation,
NGS AMERICAN, INC. EMPLOYEE MEDICAL
BENEFIT PLAN, an employee welfare benefit
plan, NGS AMERICAN INC. EMPLOYEE
BENEFIT PLAN TRUST, an employee welfare
benefit plan, and CNA CONTINENTAL
CASUALTY COMPANY, an Illinois corporation,

Defendants.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

Before the Court is Plaintiff's Motion for Reconsideration (Doc. No. 51). The Court has reviewed the pleading and finds oral argument will not aid in the resolution of this dispute. See E. D. Mich. LR 7.1(e)(2). For the reasons that follow, the motion is **DENIED**.

## I. FACTUAL BACKGROUND

Defendant NGS American Inc. (NGS), a third-party administrator of medical and disability claims, employed Plaintiff's decedent, Kathleen Strynkowski (Kathleen), as a Medical Claims Clerk from June 2000 until her termination on July 3, 2007. Plaintiff asserts that the termination violated Kathleen's rights under ERISA, 29 U.S.C. § 1001 et

1

seq., and the Michigan Persons With Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1101 et seq. (PWDCRA).

The incident giving rise to Kathleen's termination occurred in June 2007. The facts as recited in the Opinion and Order Granting Defendant's Motion for Summary Judgment follow.

> Sandy Socia, a Medical Claims Analyst, brought papers to a photocopier located near Kathleen's desk. After the copier jammed, Socia left to look for her clerk, Brenda Demo, to help clear the copier. Kathleen had observed the copier jamming, and considered it her duty to assist. After Socia left, Kathleen went to the copier and cleared the jam. She took the documents that had been jammed and threw them in a shredding bin. Kathleen understood that the documents were claim records from an NGS client seeking payment of medical expenses. She further presumed that the records were original claim documents. She knew that without the originals, the claims could not be processed and paid; however, she never attempted to retrieve identifying information. Kathleen also knew that the only means by which NGS would be likely to know which originals were destroyed would be when an insured contacted NGS inquiring about the status of his claim. Kathleen never contacted Socia about the incident.
>
> Kathleen eventually learned from Heidi Elgabrey, a Claims Analyst, that some documents were missing for a claim Elgabrey was processing. Socia also processed claims for this particular client. Plaintiff sent an email the following work day to Dee Schatow, who supervised the claims unit where Elgabrey and Socia worked. Kathleen informed Schatow that she had witnessed Socia jamming the copier and thought Schatow should know so that Elgabrey and Demo were not blamed.
>
> The email reads as follows:
>
> Hi, last week Sandy Socia jammed up the copier with YG corresp. I pulled it out of the feeder. The next day Terry called for service. I'm not saying this because I'm friends with Brenda and Heidi. I didn't want Heidi and Brenda in hot water. I didn't say anything to anyone. OK KS
>
> Defs.' Ex. A1.
>
> Kathleen did not inform Schatow that the original documents had been

discarded. Schatow passed the email to Human Resources.

The next week, Elgabrey informed Schatow that she was missing documents from the client files. Schatow had searched for the documents, but they were not located. After Elgabrey suggested that Socia may have taken the documents, management called a meeting which Schatow, Dargo-Martino, Kroepel, Socia, Elgabrey, Demo, and Kathleen attended. At the meeting, Kathleen admitted that she had thrown the original claims records in a shredding bin. Kathleen believed she threw four to five files into the bin. When Dargo-Martino heard this information, she became upset and yelled at Kathleen.

After the meeting, Kroepel and Dargo-Martino discussed Kathleen's actions and agreed Kathleen should be terminated. They met with Kathleen and informed her she was being discharged, effective immediately, even though Schatow located some missing files after the meeting was adjourned.

Doc. No. 49 at 3-4.

## II. STANDARD OF REVIEW

Under the standards articulated in E.D. Mich. LR 7.1(g)(3), to obtain the requested relief, Plaintiff must demonstrate: (1) the Court and the parties have been misled by a palpable defect, and (2) the correction of that defect will result in a different disposition of the case. A "palpable defect" is an error which is obvious, clear, unmistakable, manifest or plain. Fleck v. Titan Tire Corp., 177 F. Supp.2d 605, 624 (E.D. Mich. 2001); Marketing Displays, Inc. v. Traffix Devices, Inc., 971 F. Supp. 262, 278 (E.D. Mich. 1997) (citation omitted).

## III. ANALYSIS

After a thorough review of Plaintiff's motion, the Court finds that Plaintiff has failed to carry his burden of proving a palpable defect, or that correction will result in a different disposition. Plaintiff challenges the Court finding that he could not show

3

pretext as a matter of law on three grounds: the Court failed to consider the delay between Kathleen's conduct and her termination; the Court failed to consider evidence of disparate treatment; and the Court erred in finding the conduct was sufficient to warrant termination. The Court addresses the merits of the arguments below.

**A. Delay**

According to Plaintiff, the Court erred in finding that the email did not institute an investigation. To support this assertion, Plaintiff relies on the deposition testimony of Brenda Demo, who was asked, "How was it that you were asked to be at this meeting?"

In response, Demo stated:

> Well, Kathy had directed an email to Dee Schatow, my supervisor at the time. And there was some concerns about Kathy admitting that she had put some medical paperwork into a recycling box. And she brought this to the attention in an email to my supervisor, Dee Schatow. And I was asked to join the meeting.

Pl.'s Response to Summary Judgment Motion, Ex. 6, p.13.

Demo further testified that Kathleen was asked about missing paperwork at the meeting. According to Demo, on the morning of the meeting, Kathleen had told Demo about placing paperwork in the recycling; Demo had "not [been] aware at that time of the events" prior to that time. Id. at 14-15. Consequently, Demo had no knowledge of the incident prior to the day of the meeting. Id. at 23. Moreover, there is no evidence that management knew prior to the meeting that Kathy had throw originals into a shredding bin.

The Court reiterates that the email Kathleen sent does not mention that files or papers were discarded. The investigation was initiated after Elgabrey suggested to her

4

supervisor that another employee may have taken "missing documents."  In addition, the Court's finding that NGS terminated Kathleen contemporaneously with its discovery that Kathleen had mishandled confidential information because she was mad.  Kathleen never informed management about the documents she placed in the shredding bin until the meeting.  See Ex. 41, Kroepel notes dated 7/03/07.   Demo had no information to the contrary.

In sum, NGS had a legitimate, nondiscriminatory reason for firing Kathleen–she destroyed claims documentation. Although Plaintiff asserts that the delay between Kathleen's "clearing of the copying jam" and her termination establish pretext, the facts do not support Plaintiff's position that a delay occurred.

### B.  Disparate Treatment

Although Plaintiff did not advance this argument in his responsive pleadings, he now asserts that Kathleen was singled out for discipline.  According to Plaintiff, Socia and Elgabrey are similarly situated to Kathleen for purposes of the ERISA claim, yet their conduct was excused.  Neither Socia nor Elgabrey intentionally destroyed client claim files.  Therefore, these employees are not similarly situated.  NGS does not violate the law when it "treats differently-situated parties differently."  Ladd v. Grand Trunk Western R.R., Inc., 552 F.3d 495, 503 (6th Cir. 2009).

### C.  Magnitude of the Offense

Finally, Plaintiff challenges Defendant's business judgment in deeming the conduct at issue serious enough to warrant termination.  His position builds on his contention that management knew all of the facts before the decision to fire Kathleen was made.  This

5

contention is undermined by the record. Moreover, "it is inappropriate for the judiciary to substitute its judgment for that of management." Smith v. Leggett Wire Co., 220 F.3d 752, 763 (6th Cir. 2000) (citations omitted). There is no basis for the Court to reach a conclusion contrary to its decision granting the Defendants' request for summary judgment.

## IV. CONCLUSION

For the reasons stated, the Court **DENIES** Plaintiff's request for reconsideration.

**IT IS SO ORDERED.**

                                            s/Marianne O. Battani
                                            MARIANNE O. BATTANI
                                            UNITED STATES DISTRICT JUDGE

Date: March 25, 2010

## CERTIFICATE OF SERVICE

Copies of this Order were mailed and/or electronically filed to counsel of record on this date.

                                            s/Bernadette M. Thebolt
                                            Case Manager